UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO.: 8:25-CV-295-VMC-AAS

**CLEARWATER KEY ASSOCIATION – SOUTH BEACH II, INC.**

PLAINTIFF,

V.

**LEXINGTON INSURANCE COMPANY ,**

DEFENDANT. /

# REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR FINAL SUMMARY JUDGMENT

Defendant, LEXINGTON INSURANCE COMPANY ("Lexington"), hereby files this reply to Plaintiff, CLEARWATER KEY ASSOCIATION – SOUTH BEACH II, INC.'s ("Plaintiff") Response in Opposition to Defendant's Motion for Final Summary Judgment ("Response") [D.E. 38], and states:

## I. Lexington's Response to Plaintiff's Additional Material Facts.

1. Denied. Plaintiff does not know when the loss happened. [D.E. 31 at Ex. "5" at pg. 297, lns. 8 -11]. Plaintiff's Fed. R. Civ. P. 30(b)(6) representative and maintenance supervisor, George Pjetri, does not recall how the subject loss is attributable to a cast iron plumbing failure, nor does he recall whether it was ever determined where the water was coming from on the date of loss. [Id. at pg. 174, lns. 2 – 21]. Plaintiff's Property Manager, Ms. Day, does not recall seeing any cracks in the pipe. [Id. at Ex. "6" at pg. 92, lns. 20 – 23].

2. Denied. Plaintiff's Fed. R. Civ. P. 30(b)(6) representative and maintenance supervisor, George Pjetri, does not recall replacing a cracked section of cast iron pipe. [Id. at Ex. "5" at pg. 166, lns. 5 – 20, pg. 166 – 167, lns. 21 – 8 and pg. 174, lns. 2 – 24].

3. Denied. Lexington's engineer, Mr. Cox, testified it was inconclusive. [Id. at Ex. "12" at pgs. 65 - 66, lns. 22 – 12]. Furthermore, Lexington's counsel objected to the question presented as an improper compound question. [Id.].

4. Denied. The only two (2) Fed. R. Civ. P. 30(b)(6) representatives produced by Plaintiff for deposition in this litigation both testified they do not know why the subject claim was not reported timely. [Id. at Ex. "5" at pgs. 274 – 275, lns. 24 – 2, and Ex. "9" at pg. 104, lns. 2 – 8].

5. Denied. Plaintiff's Property Manager, Ms. Day, does not recall when Mr. Michio contacted her. [Id. at Ex. "6" at pg. 97, lns. 15 – 17]. Mr. Michio only represented one (1) other condominium on Gulf Boulevard. [D.E. 39 at Ex. "4" at pg. 40, lns. 15 – 25, pg. 43, lns. 20 – 25 and pg. 44, lns. 1 – 22].

6. Admitted.

7. Denied. Mr. Michio spent around two (2) hours at the property for this inspection. [D.E. 39 at Ex. "4" at pgs. 44 – 45, lns. 23 – 17].

8. Denied. Mr. Michio reviewed the policy and found a section he believed provided Plaintiff with coverage. [Id. at pgs. 54 – 55, lns. 24 – 4].

9. Denied. The public adjusting contract was fully executed by all parties on January 19, 2023. [Id. at pg. 53, lns. 12 – 16].

10. Denied. The public adjuster reported the loss to Lexington on May 25, 2023. [Id. at pgs. 71, lns. 9 – 18, pg. 72, lns. 10 - 13, and D.E. 22 at ¶14].

11. Denied. Lexington's Fed. R. Civ. P. 30(b)(6) representative testified "[i]t did not hurt or help" when asked if the change in the date of loss affected Lexington's ability to adjust the claim in any way. [D.E. 39 at Ex. "7" at p. 171, lns. 20 – 25]. By the time Plaintiff changed the date of loss to June 3, 2020, litigation had already begun eight (8) months prior. [D.E. 1-1; *see also* D.E. 20].

12. Denied. Lexington's adjuster, Mr. Minter, does not recall that Plaintiff's claim was related to its entire cast iron plumbing system as of December 2023. [D.E. 31 at Ex. "10" at pg. 38, lns. 8 – 18].

13. Denied. At this time, in June 2023, Plaintiff claimed only one (1) portion of one (1) pipe at the east end of the fifth-floor hallway had caused the loss, which had been repaired several years prior. [Id. at pg. 16, lns. 3 – 24, at pg. 17, lns. 2 – 19, and pg. 19, lns. 6 – 11].

14. Denied. See Response to Paragraphs 12 and 13.

15. Denied. Plaintiff's plumbing expert concluded the sanitary drainage system serving the property failed and must be replaced in its entirety to prevent further damage. [D.E. 31 at Ex. "4" at pg. 46, lns. 10 – 15]. He also concluded this failure was due to wear, tear, and deterioration that began as soon as the pipes

were put in. [Id. at pgs. 46-47, lns. 24 – 3]. The cast iron plumbing system is from the property's original construction of 1974. [Id. at Ex. 3 at pg. 59, lns. 19 – 22].

16. Denied. Plaintiff's question presented at deposition to Lexington's Fed. R. Civ. P. 30(b)(6) representative only pertained to his pre-deposition review of documents, which did not include deposition testimony obtained in litigation. [D.E. 39 at Ex. "7" at p. 10, lns. 12 – 17 and pg. 172, lns. 1 – 6]. Plaintiff's Property Manager testified she was aware the cast iron plumbing system was irreparably broken before Mr. Michio contacted Plaintiff. [D.E. 31 at Ex. "6" at pgs. 100 – 101, lns. 12 – 6]. Plaintiff's public adjuster testified he thought Plaintiff inherently knew its entire plumbing system had failed, but Plaintiff was in denial. [D.E. 39 at Ex. "4" at pg. 98, lns. 1 – 15].

17. Admitted.

18. Admitted.

19. Denied. Mr. Shell testified every stack other than the 03 and 04 stacks are in great condition. [D.E. 39 at Ex. "5" at pgs. 59 – 60, lns. 24 – 11].

20. Admitted.

21. Denied. See Response to Paragraph 19.

22. Denied. Plaintiff misstates Mr. Shell and Mr. Cox's testimony, as they could not say the period of time that would need to pass before there would be a substantial change in the condition of the cast iron pipe. [D.E. 39 at Ex. "5" at pgs. 19 – 20, lns. 20 – 12 and D.E. 31 at Ex. "11" at pg. 74, lns. 4 – 8].

23. Denied. See Response to Paragraph 22.

24. Denied. Mr. Shell testified the best time for him to have observed the cast iron pipe was before Plaintiff made repairs. [D.E. 39 at Ex. "5" at pg. 20, lns. 15 – 16]. See also Response to Paragraph 22.

25. Denied. See Response to Paragraph 22.

26. Denied. Plaintiff misstates Mr. Cox's testimony and fails to address his entire answer. Mr. Cox testified he has been prejudiced due to the late reporting. [D.E. 31 at Ex. "12" at pg. 17, lns 3 -14, pg. 20, lns. 2 – 25, and pg. 21, lns. 1 – 16].

27. Denied. During his inspection, Mr. Gulati only looked at the outside of some pipes that had been repaired. [D.E. 39 at Ex. "6" at pg. 73, lns. 2 – 13]. He did not look into the pipes during his inspection. [Id.]. He saw no breach in the cast iron plumbing system during his inspection. [Id. at pg. 79, lines 1 – 4].

28. Denied. Plaintiff misstates testimony of Lexington's Fed. R. Civ. P. 30(b)(6) representative, who testified he does not believe Lexington is taking the position that Plaintiff failed to maintain their property prior to the claim. [D.E. 39 at Ex. "7" at pg. 172, lns. 11 – 14].

## II. Notice was not Prompt and was Late as a Matter of Law.

Plaintiff argues that whether notice was prompt in this case is a question of fact. [D.E. 38 at pgs. 15 – 16]. Under the facts of this case, however, notice was late as a matter of law. Plaintiff relies on *Vision I Homeowners Ass'n v. Aspen*

*Spec. Ins.*, 674 F. Supp. 2d 1333 (S.D. Fla. 2009), a sixteen (16) year old non-binding case, to support its position that a reasonable person would not have concluded a payout was likely under the policy for the loss until February 23, 2024, when it had actual knowledge that "an award implicating the policy was likely." [D.E. 38 at pg. 15].

However, this is not the standard. The Eleventh Circuit has more recently held that "[p]rompt notice is not excused because an insured might not be aware of the full extent of damage or that damage would exceed the deductible." *Yacht Club on the Intracoastal Condo. Ass'n v. Lexington Ins. Co.*, 599 Fed. Appx. 875, 880 (11th Cir. 2015) (citing *1500 Coral Towers Ass'n v. Citizens Prop. Ins. Corp.*, 112 So. 3d 541, 544 (Fla. 3d DCA 2013); *Ideal Mut. Ins. Co. v. Waldrep*, 400 So. 2d 782, 785 (Fla. 3d DCA 1981)). Thus, the Eleventh Circuit found that whatever concerns a condominium board has about the extent of damage and its deductible are not relevant under Florida law. *Id.*

The Middle District of Florida has followed *Yacht Club* by holding that "an insured's good faith belief that the damage is trivial or not covered by the policy is insufficient to justify non-compliance with the policy's notice provision." *CMR Constr. & Roofing, LLC v. ASI Preferred Ins. Corp.*, 2021 U.S. Dist. LEXIS 43239, *11 (M.D. Fla. Mar. 9, 2021) (quoting *Kendall Lakes Towers Condo. Ass'n, Inc. v. Pacific Ins. Co., Ltd.*, 2012 U.S. Dist. LEXIS 10749, 2012 WL 266438, *4 (S.D. Fla. Jan. 30, 2012)). Like the Middle District, the Southern District of Florida has

abided by this same precedent from *Yacht Club*. *See Monterrey at Malibu Bay Condo. Ass'n v. Empire Indem. Ins. Co.*, 2022 U.S. Dist. LEXIS 77862, *25 (S.D. Fla. Apr. 28, 2022); *see also Battat v. QBE Specialty Ins. Co.*, 2022 U.S. Dist. LEXIS 16984, *18-19 (S.D. Fla. Jan. 28, 2022).

In its Response, Plaintiff cites to, and relies upon, *Yacht Club* on multiple occasions yet fails to recognize this substantial and relevant holding. [D.E. 38 at pgs. 14, 16 and 20]. It follows that Plaintiff's reliance on *Vision I* is misplaced. Notably, Plaintiff admits it observed the subject loss in the summer of 2020 and reported it to its Property Manager. [D.E. 38 at pg. 4 at ¶14]. Next, Plaintiff acknowledges water mitigation occurred on June 3, 2020, and that "repairs were made immediately" in relation to the loss. [D.E. 38 at pgs. 4 - 6 at ¶¶15, 17, 19 and 36]. Thus, Plaintiff concedes it was aware of the events resulting in the claim; but did not report the claim until May 25, 2023, approximately three (3) years later. [D.E. 38 at pg. 5 at ¶30].

Significantly, Plaintiff admits it sustained many prior and subsequent plumbing losses at the property, which required repairs and mitigation services. [D.E. 38 at pgs. 3 – 5 at ¶¶ 9-11, 13, 20 – 22, 24 – 29]. Additionally, Plaintiff's Property Manager testified it became apparent that the cast iron piping system was irreparably broken *before* Plaintiff was contacted by its public adjuster given repeated occurrences of plumbing losses and repairs. [D.E. 31 at Ex. "6" pg. 99, lns. 6 - 19, pg. 100, lns. 12 – 23, pg. 100 -101, lns. 24 – 10, and pg. 131, lns. 12 – 21].

Under Florida law, Plaintiff cannot feign ignorance to avoid its contractual obligations pursuant to the Policy that requires it to provide prompt notice of the loss or damage to Lexington. As such, notice was late as a matter of law.

## III. Plaintiff cannot rebut the presumption of prejudice.

Plaintiff attempts to rebut the presumption of prejudice by arguing that an investigation conducted immediately following the loss would not have disclosed anything materially different. To support this argument, Plaintiff relies upon a fifteen (15) year old case, *Stark v. State Farm Florida Insurance Company*, 95 So. 3d 285 (Fla. 4th DCA 2012) that involved a Hurricane Wilma residential roof claim. However, Plaintiff's reliance on *Stark* is also misplaced and in contravention of the holdings of the Eleventh Circuit and Middle District.

The Middle District recently discussed *Stark* and found the Fourth District Court of Appeal has retreated from its prior reasoning that the rendering of a causation opinion could create a disputed issue of act sufficient to rebut prejudice. *See Baytree v. Clear Blue Specialty Ins. Co.*, 2024 U.S. Dist. LEXIS 71436, *27 (M.D. Fla. Feb. 23, 2024) (citing *De La Rosa v. Fla. Peninsula Ins. Co.*, 246 So. 3d 438, 442 (Fla. 4th DCA 2018) ("even though there may be disputed issues of fact as to whether the insurer was prejudiced in determining the cause of the loss, the facts, even as presented by the insured's adjuster and engineer, show that the insurer would be prejudiced by the passage of time in investigating the extent of the loss, and thus, the cost of repair. The insured did not overcome the

presumption of prejudice.")). In *Baytree*, the Middle District was instead "persuaded by the more recent body of case law recognized by the Eleventh Circuit Court of Appeals…finding that the mere fact a causation opinion was rendered does not rebut the presumption of prejudice in the absence of evidence addressing lack of prejudice in the actual *investigation* of the claim." *Id.*

In the instant case, the cast iron plumbing system was not in the same condition in late May 2023 as it was in early June 2020. Significantly, Plaintiff admits it sustained many prior and subsequent plumbing losses, which required repairs and mitigation services. [D.E. 38 at pgs. 3 – 5 at ¶¶ 9-11, 13, 20 – 22, 24 - 29]. These admitted plumbing losses, repairs and mitigation services were all addressed by Plaintiff *before* Lexington was provided with notice and an opportunity to investigate in late May 2023. [Id.]. This constitutes prejudice to Lexington's investigation that Plaintiff cannot sidestep and avoid. In fact, Lexington's retained Professional Engineer, Justin Cox, P.E. confirmed he was prejudiced as a result of this. [D.E. 31 at Ex. "12" at pg. 17, lns 3 -14, pg. 20, lns. 2 – 25, and pg. 21, lns. 1 – 16]. Similarly, Lexington's plumbing expert testified the best time for him to have inspected was pre-repair. [D.E. 39 at Ex. "5" at pg. 20, lns 15 – 16].

It is clear the cast iron plumbing system inspected by Lexington in late May 2023 was not in the same condition as it was in several years prior at the time of the subject loss. The system had undergone many other losses that were repaired

and mitigated before Lexington was notified of the subject loss. As such, this matter is not akin to *Stark*, which pertained to a late reported Hurricane Wilma residential roof claim, and not a large commercial condominium with many other plumbing losses that were repaired and mitigated before notice was ever provided. Accordingly, there is no genuine issue of material fact because Plaintiff cannot rebut the presumption of prejudice imposed on Lexington and its investigation.

**IV. The Policy does not provide for access to the entire system.**

In its Response, Plaintiff misquotes the Policy and suggests it provides coverage for access to repair the entire plumbing system. This is false. In the event of a covered loss due to the accidental discharge or leakage of water or other substance that escapes as a direct result of the breaking apart or cracking of a plumbing system, the Policy only provides to "pay for the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes." [D.E. 22-1 at pg. 29, 32-33 and 35-36 of 78]. On the date of loss, the only water or other substance that reportedly escaped and caused damage was from one (1) portion of one (1) pipe located just outside Unit 504, which was repaired immediately. Now, many years later, Plaintiff attempts to argue this one localized water loss event entitles it to coverage to access the entire plumbing system. Plaintiff's *non sequitur* argument makes no sense and is not what the Policy provides for by its plain language.

WHEREFORE, Defendant, LEXINGTON INSURANCE COMPANY, respectfully requests this Court enter an Order granting its Motion for Final Summary Judgment and grant any additional relief it deems just and proper.

Respectfully submitted,

**BERK, MERCHANT & SIMS, PLC.**

***/s/ Andrew S. Genden***
Melissa M. Sims, Esq. / FBN:85936
Msims@Berklawfirm.com
Dalvarez@berklawfirm.com
Andrew S. Genden, Esq./FBN 105156
Agenden@berklawfirm.com
eibarra@berklawfirm.com
2 Alhambra Plaza, Suite 700
Coral Gables, Florida 33134
Tel: 786-338-2900/Fax: 786-338-2888
***Counsel for Defendant***

## CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the List below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Shaun M. Cummings, Esq.
**FLORIN ROEBIG, P.A.**
777 Alderman Road
Palm Harbor, FL 34683
Tel: 727-786-5000
Email: FPservice@florinroebig.com
scummings@floringroebig.com
tpaulos@florinroebig.com
***Counsel for Plaintiff***

***/s/ Andrew S. Genden***
Andrew S. Genden, Esq.